BREAUX, C. J.
The action is petitory.
Plaintiff sued the defendant for 40 acres of land of which the following is a description: S. W. % of S. W. % of section 6, township 21 N., range 2 E., and claimed that it was selected by the state under the Swamp Land Grants of 1849 and 1850, and it owns all the rights of the state.
Defendant claimed under the United States government by virtue of a location by John Taylor, assignee, of a Choctaw Script.
In the district court, judgment was rendered in favor of plaintiff, and on appeal to the Court of Appeals it was reversed.
Motion to Pave the Writ Nisi Recalled.
[1,2] The respondent on the 13th of October, 1913, filed. a motion to have the certiorari recalled on the ground that there was no final judgment and decree rendered by the Court of Appeals for the reason that neither the opinion nor the decree of the Court of Appeals, nor the opinion or the decree rendered on the rehearing granted, were ever signed by the justices of the Court of Appeals ; that the opinions and decrees did not bear dates on which rendered, and there is nothing to indicate whether the required number of justices concurred in the decree; that the petition and amended affidavit do not show notice of intention to apply for the writ, and the affidavit is made by one purporting to be an attorney for the applicant.
We take up these grounds in the inverse order stated.
First The attorney for plaintiff swore that he was its attorney and added to his affidavit all that is needful in writing a complete affidavit.
It also appears that notice to apply to this court for a certiorari was given.
The petition of relator was filed in May, 1913.
The defendant made objection only in October, 1913.
The ease is now before us. There is no merit in the application to have the writ recalled. There are dates on some of the documents and papers sufficient to enable the court to determine the issues.
Other grounds urged do not justify a dismissal. We will not inferentially conclude that the opinion was not handed down in accordance with the direction of the members of the Court of Appeals.
The motion is overruled.
On the Merits.
[3, 4] Returning to the case as stated before we took up the' motion to dismiss, we find that the plaintiff claimed through the state under title which emanated from the state under and by virtue of the act of Congress of 1849 and the selection by the state, made on October 9, 1850.
The defendant, on the other hand, claims under title which emanated from the general government by virtue of a location by John *1091 Taylor, assignee, with Choctaw Script. The date of the location of this script in the local land office was October 9, 1850.
The contention on the part of plaintiff is that any attempt made to sell this land by the federal Land Office after the adoption of the Swamp Land Act in March 2, 1849, c. 87, 9 Stat. 352, was illegal, as the United States by the terms of that act had parted with its title. Furthermore, that the confirmatory acts of Congress, which defendant refers to as date of confirmation of title, could be of no avail by reason of the fact that the United States parted with its title at the date before mentioned.
It follows therefqre that, when the plaintiff entered this land and became the grantee of the state, the land had not yet been selected by the state, although it had some time previously been granted under the Swamp Land Act by the general government to the state.
Defendant resents plaintiff’s claim and avers that he is the owner of the property, having acquired it from Mrs. S. J. Taylor, who had acquired it from N. W. Taylor, and that by mesne conveyance the land became his.
The last owners previous to him acquired in the year 1880.
He further states that John Taylor located the land on October 9, 1850, with the Choctaw Script before mentioned in the name of Istantubee from the United States government ; that, if the United States government had attempted to grant this land to the state, it would have been in conflict with the Constitution of the United States, as it would have been a divesture of his vested rights; that the land was not surveyed and not approved until after the United States government had received John Taylor’s location and his Choctaw Script in payment of the land. 1-Ie avers that he and his ancestors in title have been in open, peaceable, uninterrupted possession of the property as owners and in good faith, under just title, for more than 60 years, and he pleads the prescription of 10, 20, and 30 years in support of his title and as a bar to any right plaintiff may have had in the premises.
All parties agree that the selection by the state was made on October 9, 1850, two or three months after defendant had located the land, the Choctaw Script, and a short time after the land inured to the state under the Swamp Land Act of 1849.
If the Swamp Land Act before cited conveys a right in prsesenti, the defendant has no title. If, on the other hand, it did not convey a right in prsesenti, the defendant is the owner of the property.
The trend of the decisions supports the proposition that the Swamp Land Grant of 1849 is a grant in prsesenti. One who enters swamp land under that grant acquires a right which ripens into a complete title immediately after it has been determined in the manner required by the government that it is swamp land.
The following is quite sweeping in its terms, and to it some effect must be given: The land was donated to the end of aiding the state in constructing levees and drains on swamp and overflowed lands in Louisiana unfit for cultivation. “These lands,” to quote from the act, “are hereby granted to the state.”
The grant is broad and includes all land referred to in section first of the SwampLand Grant of 1849.
While the title may not be entirely complete and absolute, it cannot very well be concluded that the other sections of the cited act, providing for the identification of the land as swamp land have the effect, despite the clear language of the first section,, of enabling the general government to retain a right of ownership to these lands and grant them as if still in the government.. *1093 There remains something else, it is true, to be done. The lands must be identified, as before stated, as swamp lands, and to that end the act in question provides that the Secretary of the Interior shall cause a personal examination to be made under the direction of the Surveyor General by experienced and faithful deputies of all swamp lands in the state of the class before mentioned, and that on the approval of the Secretary of the Interior the land vests in the state in fee simple.
In other words, the lands are granted in clear language in the first section. The section following contains expressions entirely confirming the grant and declaring the title shall be in the state.
In quite a number of decision’s, it is held that the power is given to the Secretary of the Interior to determine what lands were swamp. There are no decisions to the contrary.
The purpose of the general government was to grant to the state no lands except those that were swamp lands. It never has been held that the government made the grant of the land to the state upon the ruling of the Secretary of the Interior that it was swamp land, but it was the intention, as repeatedly held, that, upon the determination that it was swamp land, it inured to the state.
There are a number of decisions cited on that subject in the United States Digest of the United 'States Supreme Court, vol. 5, p. 483.
In the following decisions it was held, in substance, that the act imported a present grant to the state, and the title to the land became vested into the state immediately, subject, however, to the approval of the officer. That is, the land was to be identified by him; it was a question of identification of the grant, and not one of completing the title. After this had been done, the title relates back to the date of the act.
The plaintiff having entered the land after the act of 1849 was adopted, the title remained somewhat incomplete until it was determined that it was swamp land.
Tubbs v. Wilhoit, 138 U. S. 134, 11 Sup. Ct. 279, 34 L. Ed. 887, is a well-considered decision. It holds in regard to similar giants to that of 1849 as above stated. The court goes on to hold that the words, to wit, “are hereby granted,” in section first of the act of 1849, imported a present grant and not a grant depending upon future conditions; that the title passed at once to the state after the identification by the Secretary of the Interior, but when identified the title to relate back to the date of the act.
As the title relates back to the date of the act, it must render legal the grant which the state had made to the plaintiff. There is no escape from that conclusion.
As to the divested right to the property: It is very true that when one has a vested right it cannot be taken away from him legally. But here defendant did not acquire a right. On the contrary, from our point of view, the right was acquired by the state; the state tracing its history back to the general government.
Now as relates to prescription: The question is not argued. Besides, it was not shown that the defendant ever was in possession of the property and that he held as owner of the land. The plea of prescription was not urged in argument.
Bor reasons stated, it is ordered, adjudged, and decreed that the judgment of the Court of Appeals in this case is avoided, annulled, and reversed on grounds herein stated; the cause is remanded in order to reinstate the judgment of the district court, which is made ours; costs to be paid by defendant Taylor here; also the costs of the Court of Appeals and the costs of the district court. >